29980. ATLANTA, BIRMINGHAM AND COAST RAIL-
ROAD COMPANY *v.* FORRESTER, commissioner.

DECIDED APRIL 28, 1943.

*Brandon, Matthews, Smith & Nall,* for plaintiff in error.

*T. Grady Head, attorney-general, Claude Shaw, assistant attorney-general,* contra.

FELTON, J. (*a*) The standard classification of accounts prescribed by the Interstate Commerce Commission pursuant to section 20 of the interstate commerce act required that the tax under the carriers taxing act of 1935 (the railroad retirement act) be accrued on the records of the railroad as an expense during the year 1936, and that the tax which was accrued on the records of the railroad in 1936, but never paid, be entered on the records of the railroad as income in 1937 when the taxing act was repealed. It is true, as contended by the commission, that the Interstate Commerce Commission does not prescribe how income taxes of railroads are returned or paid, and has no authority to do so; but the law of this State requires that the income of a railroad be computed for income-tax purposes according to the standard classification of ac-

counts prescribed by the Interstate Commerce Commission. The Code, § 92-3116, declares: "Railroad and public-service corporations.—When the business of any corporation engaged in the operation of a steam or electric railroad, express service, telephone or telegraph business, or other form of public service is partly within and partly without the State, the net income of such corporation for the purpose of this law shall be that amount ascertained by apportioning to the State the sum of the net income of the corporation, including dividend income that may legally be taxed by the State (exclusive of income from tax-exempt securities, and without any deduction for Federal and State income taxes) as shown by its record kept in accordance with the standard classification of accounts prescribed by the Interstate Commerce Commission when such standard classification of accounts includes in net income rents from all sources; . . Provided, that if any such corporation keeps its records of operating revenues and operating expenses on a State basis in accordance with the standard classification of accounts prescribed by the Interstate Commerce Commission, and in such manner as to include in net income for the State the effect of all intrastate and/or interstate business applicable to the State, *then such State records may, under the supervision of the Commission, be used by the taxpayer in reporting the net taxable income within the State."* (Italics ours.)

There is no contention that the railroad kept its records of operating revenues and expenses on a State basis; so if the tax was otherwise properly accrued, the tax assessed against it was unauthorized. The commissioner contends, however, that the law makes it discreticnary with him as to whether the computation shall be according to the prescription of the Interstate Commerce Commission. We do not concur in this view because the discretion, if it is a discretion, allowed by Code § 92-3116 is contained in the proviso of the section and refers to the method of computation and records described therein, and does not refer to the method and records in the main part of the section preceding the proviso. In this view of the State law requirements the commissioner was not authorized to follow the ruling and order of the Internal Revenue Bureau even if following it in *one isolated instance* as to *one question* would have material weight in the determination of whether the commissioner's ruling was correct. See *Temple Baptist Church*

v. *Georgia Terminal Co.*, 128 *Ga.* 669, 680 (58 S. E. 157).

(*b*) The commissioner further contends that the tax was improperly accrued on the books of the railroad for the reason that the railroad contested the constitutionality of the tax and did not admit that it was due. It does not seem that the right to accrue losses depends upon whether the taxpayer admits his liability at the time of the attempted accrual. For instance, the commissioner cites Lucas *v.* American Code Co., 280 U. S. 445 (50 Sup. Ct. 202, 74 L. ed. 538, 67 A. L. R. 1010), in which the taxpayer contested liability. Yet it will be observed that the case turned, not on the taxpayer's failure to admit liability, but on the facts that it did not do more than set up a reserve on the books to cover a contingent liability, and that at the time of the accrual the amount of loss was wholly unpredictable. The cases cited by the commissioner are cases where the fact of liability and the amount of liability are unascertainable at the time of the accrual. To allow a taxpayer to fix his own date of accrual on the basis of his admission of liability would wreak havoc with the law. In U. S. *v.* Anderson, 269 U. S. 422 (46 Sup. Ct. 137, 74 L. ed. 347), it was held that the taxpayer could not avoid adjusting his tax on the accrual basis by omitting accrued tax from its account. "An item of income accrues when all events have occurred which fix its amount and determine the liability of the party from whom it is forthcoming to pay." Finucane *v.* U. S., 21 Fed. Supp. 122. There the court held that whether the accrual was proper or not depended on the circumstances at the time of the accrual and not on subsequent events. In this case the amount of the tax was definite and certain, and everything necessary had been done to fix the tax and the taxpayer's liability. Whether the tax was due, or whether the amount was proper, did not depend on an unsettled question of fact, or application of law to facts not certain. Whether the tax was due or not could not be affected by any attitude or contention of the taxpayer. It either owed the tax or it didn't. If the suit to enjoin the tax by the railroad had prevailed there would have been no proper accrual. If the suit had been lost by the railroad and the tax held constitutional the tax would have been valid from the beginning and not from the time it was held to be constitutional. The same result obtains upon the repeal of the tax, which made the constitutional question moot.

The only case in point which we have found is in accord with this ruling. In Commissioner of Internal Revenue v. Central United Nat. Bank, 99 Fed. (2d), 568, it was held that the taxpayer could accrue the liability for taxes despite the fact that it brought suit to restrain the collection, and that the suit in no wise affected the validity of the taxes or the taxpayer's obligation to pay them. In that case the taxpayer was permitted to accrue taxes for the years in which they were due, and to accrue as income in a subsequent year the amounts saved in a compromise settlement. The principle is identical with the one in the instant case. The commissioner contends that this view results in a "windfall" to the railroad. If a benefit that is derived by a taxpayer from a deduction allowed by law may be called a windfall, he is correct. It is no more a windfall than would have been the State's advantage in 1937 if the income accrued from the repeal of the tax had resulted in a much higher tax on the railroad. The fact that the application of rules of law results in relieving the railroad from the payment of taxes for 1936 is no argument against the law. The law is universal, uniform, indiscriminatory, and unaffected by fortuitous consequences. If the railroad had made a profit in 1937 and had refused to accrue the repealed taxes in 1937 its taxes would have been reassessed to cover the additional income. So, if there is a "windfall" it is a mere incident without a rational bearing on the issues involved. The court erred in finding against the railroad.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*