DIXIE PINE PRODUCTS CO. *v*. DYER.

(Division A. Jan. 25, 1937. Suggestion of Error Overruled March 8, 1937.)

[172 So. 145. No. 32477.]

**T. J. Wills**, of Hattiesburg, for appellant.

230

**Wm. H. Maynard,** Assistant Attorney-General, for appellee.

232

Argued orally by **T. J. Wills**, for appellant, and by **Wm. H. Maynard**, for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of the First Judicial District of Hinds county sustaining a demurrer to a bill of complaint, seeking to enjoin the state motor vehicle commissioner from collecting or attempting to collect a gasoline excise tax on a solvent or reducing agent used by appellant in extracting rosin from pine stumps and wood.

The bill of complaint alleged that the appellant is engaged in the manufacture of turpentine, pine oil, and rosin from pine stumps and wood, which are ground into small chips and shavings; that the turpentine and pine oil are removed from these chips and shavings by the application of steam of a high temperature, and thereafter the rosin is removed from said chips and shavings by placing them in large reservoirs or tanks and treating them with a solvent or reducing agent specially manufactured for that purpose.

The bill further charges that the appellant does not use the said solvent on the streets, roads, or highways of the state, or in internal combustion engines, or for any commercial purpose; that it does not sell, deliver, or otherwise dispose of the solvent, but only uses it in tanks, which are stationary, through which the pine chips and shavings are passed for the purpose of dissolving and extracting the rosin contained therein.

While the bill alleged that the said solvent is a petroleum product, with a specific gravity above 56 degrees Tagliaubes baume scale, at a temperature of 60 degrees Fahrenheit, with a boiling range beginning at 230 degrees Fahrenheit, and vanishing at 290 degrees Fahrenheit, it further charged that it "is not gasoline, within the definition of section 5, paragraph (a) of the laws of the State of Mississippi, chapter 162, Acts of 1936, in that the said solvent is not used or usable in propelling motor vehicles, when used alone, and is not a liquid that is ordinarily and practically commercially usable in internal combustion engines for the generation of power, neither is it a distillate or a condensate of petroleum, natural gas, coal, coal tar, vegetable ferments and other products so usable in said internal combustion engines for the generation of power. Complainant reiterates, however, that the said solvent is a petroleum product, and has a gravity test above 46 degrees Tagliaubes baume scale, at a temperature of 60 degrees Fah-

renheit. Complainant would show, however, that the said solvent could be mixed or blended with other petroleum products so as to make it usable in motor vehicles. To so make it usable a petroleum product with a boiling range beginning at 80 degrees Fahrenheit, and vanishing at 230 degrees Fahrenheit, and also a petroleum product with a boiling range beginning at 290 degrees Fahrenheit and vanishing at 420 degrees Fahrenheit, must be mixed or blended with said solvent. The mixing of said solvent with the two above described products, in the proper proportions, would make a petroleum product usable in motor vehicles or internal combustion engines, but complainant is not advised as to the proportions of each necessary to be used in mixing or compounding the same. Complainant would show, however, that to so blend or mix said solvent would cost more than twice the cost of gasoline on the open market. Complainant shows this Honorable Court that said solvent will start an internal combustion engine, or motor in a motor vehicle provided said engine or motor has been previously heated, but that said solvent will not start a cold engine or motor. After an internal combustion engine, or a motor in a motor vehicle, has been started, said solvent will run said internal combustion engine, or propel said motor vehicle, but the acceleration would be poor and the mileage power so low that the use of said solvent for said purpose would be impracticable.''

The act of the Legislature imposing this excise tax on gasoline and oils is chapter 162, Laws 1936, and by section 35 of this act the purpose thereof in imposing the tax on gasoline is fully declared and set forth. By this section, it is declared to be the purpose and intention of the Legislature to impose an excise tax on all persons engaged in the business of importing, receiving, purchasing, acquiring, using, storing, manufacturing, refining, distilling, blending, compounding, selling, or distributing gasoline and oil, or either in the state of

Mississippi; and for the purpose of enforcing the provisions of the act, there is thereby created a prima facie presumption that all gasoline and oil utilized for any of the above-stated purposes is intended for use in propelling motor vehicles on the public roads and highways. The further purpose of this act to provide for the permanent exaction of the full tax only on gasoline used in propelling motor vehicles used on the public highways and roads is expressly recognized by the further declaration of this section that, "It is the further purpose of this act to provide for the refunding to the consumer of all tax actually paid, less one cent (1c) per gallon, on gasoline not used in propelling motor vehicles on the public highways and roads." Full and detailed provisions for securing this refund on gasoline not used in operating motor vehicles upon the streets, public roads, and highways of the state are contained in sections 13 to 17, inclusive, of the act.

The inquiry here then recurs to the question whether or not the solvent used by the appellant in the manner set forth in the bill of complaint is gasoline within the definition thereof as contained in section 5 (a) of the act, and upon which a tax is imposed by section 8 (a) of the act, levying a tax of "six cents (6c) per gallon on all gasoline stored, sold, distributed, manufactured, refined, distilled, blended or compounded in this state or received in this state for sale, use on the highways, storage, distribution, use in internal combustion engines, or for any commercial purposes."

Section 5 (a) of the said chapter 162 defines the word "gasoline" as follows: "The word 'gasoline' as used in this act shall include all liquid fuels which are used or usable in propelling motor vehicles, either when used alone or when mixed, blended, or compounded, including liquids ordinarily, practically and commercially usable in internal combustion engines for the generation of power, and all distillates of, and condensates from pe-

troleum, natural gas, coal, coal tar, vegetable ferments, and other products so usable and received in this state, having a gravity test above 46° tagliaubes baume scale, at a temperature of 60° F.''

The bill of complaint specifically charged, and it is admitted that the solvent in question is not used in propelling motor vehicles, and if it is brought under the above definition, it must,be because it is ''usable in propelling motor vehicles.'' The question then is, What did the Legislature intend to include within the designation of liquid fuels ''usable in propelling motor vehicles?''

The bill of complaint alleges that said solvent can be mixed with other petroleum products of stated boiling ranges, in undisclosed and uncertain proportions, so as to make it usable in propelling motor vehicles or in internal combustion engines, but that so to do would make the cost more than double the cost of gasoline on the market; that said solvent will start an engine or motor in a motor vehicle only after the motor has been heated, and that while it will propel a motor vehicle or internal combustion engine after the motor or engine has been heated, the acceleration would be so poor and the mileage power so low that the use of the solvent for that purpose is impracticable.

Webster's New International Dictionary (2 Ed.), gives two meanings of the word ''usable,'' (1) ''that can be used'' and (2) ''that is convenient and practicable for use.'' It seems clear to us that the Legislature intended that the latter meaning should apply in determining what liquid fuels should come under the general classification of gasoline. After designating as gasoline all liquid fuels which are used or usable in propelling motor vehicles, there is added a general provision designating as gasoline all liquids ordinarily, practically, and commercially usable in internal combustion engines for the generation of power, and all distillates of, and conden-

sates from petroleum, natural gas, coal, coal tar, vegetable ferments, and other products so usable. There is no apparent reason why the Legislature, in the first provision, should include in the definition of gasoline, mixed, blended, or compounded liquid fuels which are not ordinarily, practically, and commercially usable in propelling motor vehicles, while in the general provision immediately following, the liquids, distillates of, and condensates from petroleum, natural gas, coal, coal tar, vegetable ferments, and other products which are defined as gasoline, are limited to those ordinarily, practically, and commercially usable in internal combustion engines for the generation of power. We conclude, therefore, that the Legislature intended to include in the definition of gasoline only those liquid fuels which are ordinarily, practically, and commercially usable in internal combustion engines or in propelling motor vehicles.

The bill of complaint herein clearly alleges that the solvent or reducing agent used by appellant is not used in propelling motor vehicles, and is not ordinarily, practically, and commercially usable in internal combustion engines or in propelling motor vehicles, and states the facts upon which these allegations are based, and consequently upon the pleading here we think it must be held that this solvent does not come within the definition of gasoline upon which a tax is imposed by section 8 (a) of the act. The demurrer interposed to the bill of complaint should, therefore, have been overruled, and the decree of the court below will be reversed and the cause remanded.

Reversed and remanded.